IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PRAETORIAN INSURANCE COMPANY a/s/o RAYMOND SAMOROO, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 18-cv-12314 |
| v. | : | |
| | : | |
| AIR VENT, INC., | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant | : | |
| | : | |
| AIR VENT, INC., | : | |
| | : | |
| Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KING OF FANS, INC., POWERMAX ELECTRICAL CO., LTD., HALLMARK HOMES, AND SCOTT WEBER, | : | |
| | : | |
| Third-Party Defendants, | : | |
| | : | |

**THIRD-PARTY PLAINTIFF, AIR VENT, INC.'S, MEMORANDUM OF LAW IN OPPOSITION TO POWERMAX ELECTRICAL CO., LTD'S MOTION TO DISMISS AND AIR VENT, INC.'S CROSS-MOTION FOR JURISDICTIONAL DISCOVERY**

Robert Cosgrove, Esquire
Jennifer L. Seme, Esquire
WADE CLARK MULCAHY
1515 Market Street, Suite 2050
Philadelphia, Pennsylvania 19102
Attorneys for Third-Party Plaintiff,
Air Vent, Inc.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT                                                                      1

STATEMENT OF FACTS                                                                         2

ARGUMENT                                                                                   3

    A.    Specific Jurisdiction                     6

        1.    Jurisdictional discovery is warranted to determine whether
Powermax purposefully directed its activities to New Jersey                                6

        2.    To the extent the first prong of the analysis is met following
jurisdictional discovery, the second prong would likewise be
satisfied in that this lawsuit arises out of the sale of Powermax
products or completed products containing Powermax motors in
New Jersey                                                                                 8

    B.    General Jurisdiction                      8

CONCLUSION                                                                                 9

# **TABLE OF AUTHORITIES**

## **Cases**

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
107 S.Ct. 1026 (1987)                                                7

*Bristol-Myers Squibb v. Sup. Ct.*,
137 S. Ct. 1773, 1780 (2017)                                         9

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 476 (1985)                                            6, 8

*Cassini v. Gooding & Co.,* No. 2:15-cv-06544,
2016 WL 1389937, at *3 (D. N.J. April 8, 2016)                       3

*Cateret Sav. Bank, FA v. Shushan*,
954 F.2d 141, 145 (3d Cir. 1992)                                     3

*Chavez v. Dole Food Co., Inc.*,
836 F.3d 205, 223 (3d Cir. 2016)                                     9

*Daimler AG v. Bauman*,
571 U.S. 117, 139 (2014)                                            8, 9

*Display Work, LLCs v. Bartley*,
182 F. Supp. 3d 166, 172 (D.N.J. 2016)                               6

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA,*
623 F.3d 147, 157 (3d Cir. 2010)                                     4

*Int'l Shoe Co. v. Washington*,
326 U.S. 310, 316 (1945)                                             3

*J. McIntyre Machinery, Ltd. v. Nicastro*,
131 S. Ct. 2780, 2789 (2011)                                         7

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324, 330 (3d Cir. 2009)                                    3, 4

*O'Connor v. Sandy Lane Hotel Co.*,
496 F. 3d 312, 316 (3d Cir. 2007)                                    6

*One World Botanicals, Ltd. v. Gulf Coast Nutritionals, Inc.,*
987 F. Supp. 317, 322 (D. N.J. 1997)                                 4

*Oticon, Inc. v. Sebotek Hearing Systems, LLC.*,
865 F. Supp.2d 501, 507 (D. N.J. 2011)                                    3, 6

*Patterson v. FBI*,
893 F.2d 595, 603-04 (3d Cir. 1990)                                       3, 4

*Petrucei v. Rusin*,
642 F. App'x 108, 110 (3d Cir. 2016)                                      6

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
819 F.2d 434, 437 (3d Cir. 1987)                                          8

*Silent Drive, Inc. v. Strong Indus., Inc.*,
326 F.3d 1194, 1201 (Fed. Cir. 2003)                                      3

*Synergy, Inc. v. Manama Textile Mills, W.L.L.*,
No. Civ. A. 06-4129, 2008 WL 6839033, at *1 (D. N.J. Feb. 19, 2008)       4

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446, 451 (3d Cir. 2003)                                          4

*Travelers Health Assn. v. Virginia*,
339 U.S. 643, 647 (1950)                                                  8

*Walden v. Fiore*,
571 U.S. 277, 284 n.6 (2014)                                              6

*World-Wide Volkswagon Corp. v. Woodson*,
100 S. Ct. 559, 62 (1980)                                                 7

**Statutes**

Fed. R. Civ. P. 12(b)(2)                                                  4

**Rules**

N.J. Court R. 4:4-4(b)(1)                                                 3

## PRELIMINARY STATEMENT

Third-Party Plaintiff, Air Vent, Inc. (hereinafter "AVI") is entitled to jurisdictional discovery from Third-Party Defendant Powermax Electrical Co., Ltd. (hereinafter "Powermax"). This suit involves a subrogation claim arising out of a fire at the New Jersey home of Raymond Samoroo on April 11, 2017.  Plaintiff claims that the first was caused by an attic fan manufactured or supplied by AVI.  AVI manufactures and sells attic fans with motors manufactured and supplied by Powermax.  AVI filed a Third-Party Complaint asserting claims against Powermax.  Powermax recently filed a Motion to Dismiss asserting that this Court lacks personal jurisdiction over Powermax.

In support of its Motion, Powermax offered the Declaration of Stephy Tsui, a sales maager for Powermax. According to Tsui, Powermax sold motors to DM(Asia).[1]  (Tsui Dec. at ¶ 8 [Exhibit "A"]). However, AVI believes that purchase orders reflected sales from Powermax, not DM(Asia). Although Tsui represents that DM(Asia) accept[s] delivery of the equipment in China [and] then shipped the electric motors it purchased from Powermax to its customers in the United States, AVI believes that documents reflect the motors were shipped directly from the Powermax facility to AVI in Dallas, Texas. (Tsui Dec. at ¶8 [Exhibit "A"]).  In addition, although Tsui claims Powermax does not sell products in New Jersey, AVI has evidence that a Mainstay brand fan manufactured or supplied by Powermax was recently available in a New Jersey Walmart. (Troutman Affidavit at ¶ [Exhibit "B"]). Despite this backdrop, Powermax asserts before this Court that it has no contacts with New Jersey. AVI respectfully requests that Powermax's motion be denied and AVI be granted an opportunity to engage in jurisdictional discovery to ascertain Powermax's specific contacts with New Jersey.

---

[1] AVI's Joinder Complaint also named DM (Asia), but service on DM (Asia) in China has been delayed due to the corona virus.

1

## **STATEMENT OF FACTS**

This case involves a subrogation claim brough by Praetorian Insurance Company ("PIC") on behalf of its insured, Raymond Samoroo, for damage sustained in a fire at the Samoroo home on April 11, 2017. (Pltf. Compl. [Exhibit "C"]). PIC alleges the fire was directly and proximately caused by the defective design and manufacture of AVI's ventilation fan. (Pltf. Compl. at ¶ 20 [Exhibit "C"]). PIC asserts a strict liability claim against AVI relating to the design and manufacture of the fan assembly. (Pltf. Compl. at ¶¶ 20, 26 [Exhibit "C"]). One of the subject components implicated in the defective design claim is the fan's motor. The fan's motor was designed, manufactured, sold, or otherwise supplied by King of Fans, Inc. and Powermax. AVI filed a Third-Party Complaint against, *inter alia*, King of Fans, Inc. and Powermax seeking to hold same liable for any damages resulting from defects in the motor. Powermax filed a motion to dismiss the Third-Party Complaint based on lack of jurisdiction. As set forth in the Preliminary Statement above, AVI has reason to question a number of the averments contained in the Declaration of Stephy Tsui regarding Powermax's contacts with New Jersey. Therefore, AVI requests that this Court permit AVI to engage in jurisdictional discovery on the issue.

## **ARGUMENT**

A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Under New Jersey law, personal jurisdiction is governed by the New Jersey's long arm statute. N.J. Court R. 4:4-4(b)(1). The statute extends jurisdiction over non-resident defendants to the extent "consistent with due process of law." *Cateret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). In short, due process requires that the defendant have some "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

When a defendant raises a jurisdictional challenge, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Cassini v. Gooding & Co.,* No. 2:15-cv-06544, 2016 WL  1389937, at *3 (D. N.J. April 8, 2016) (*quoting Cateret Say. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)). However, where no jurisdictional discovery has been taken, the court must accept the allegations of the complaint as true and resolve all factual disputes in the plaintiff's favor.  *See e.g. Oticon, Inc. v. Sebotek Hearing Systems, LLC.*, 865 F. Supp.2d 501, 507 (D. N.J. 2011) (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)). As applied here, Powermax's motion to dismiss must be denied because the parties have not engaged in jurisdictional discovery and, as such, any disputes regarding personal jurisdiction raised at this juncture must resolved in Air Vent's favor.

Once jurisdictional discovery is conducted, a plaintiff bears the burden of establishing that jurisdiction is proper through sworn affidavits or other competent evidence. *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990). The evidence must demonstrate that the defendant "purposely

availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" and that the defendant should reasonably anticipate being brought into Court in the subject forum. *Id.* (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003). When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), a court "will view the facts and consider the documentary submissions in a light most favorable to the Plaintiff." *Synergy, Inc. v. Manama Textile Mills, W.L.L.*, No. Civ. A. 06-4129, 2008 WL 6839033, at *1 (D. N.J. Feb. 19, 2008) (citing *One World Botanicals, Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 322 (D. N.J. 1997)).* A court must resolve all disputes as to material facts in plaintiff's favor. *Id.*

Jurisdictional discovery is permissible where, as here, the basis set forth for personal jurisdiction is not clearly frivolous. *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 336 (3d Cir. 2009). Courts permit jurisdictional discovery where the plaintiff presents factual allegations that suggest with reasonably particularity the possible existence of the requisite contacts between the defendant and the forum state. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA,* 623 F.3d 147, 157 (3d Cir. 2010) (internal citations omitted). Here, AVI has provided factual allegations that suggest the possible existence of the requisite contacts.

Jurisdictional discovery is necessary to ascertain the true facts regarding Powermax's contacts with New Jersey and Powermax's conduct directed toward New Jersey.  In support of its Motion, Powermax offered the Declaration of Stephy Tsui. (*See* Tsui Declaration [Exhibit "A"]). Tsui, a Sales Manager with Powermax, alleges that Powermax does not: directly sell any products within the state of New Jersey; have any contracts or agreements in New Jersey; maintain a website for direct sales to anyone in New Jersey; possess or own real estate in New Jersey; send

4

representatives to repair products in New Jersey; hold bank accounts in New Jersey; or employ New Jersey citizens or residents in New Jersey. *Id.*

Conspicuously absent from Tsui's Declaration is any reference to the following information, all of which would be relevant and probative to the jurisdictional questions presented:

- Whether Powermax indirectly sells products for sale within New Jersey and, if so, what contacts, if any, does Powermax have with New Jersey regarding those contracts and subsequent sales;
- Whether any website owned, developed, controlled, maintained or utilized by Powermax was provided to consumers within New Jersey for purposes of marketing Powermax products, receiving and reviewing customer service complaints, receiving or reviewing warranty claims or any other purpose related to Powermax products;
- What revenue Powermax derives (whether directly or indirectly) from the sale of its products in New Jersey;
- Whether Powermax sent its officers, employees, agents or assigns to New Jersey for any purpose, including meetings, trade shows, inspections, etc.;
- Whether Powermax executed contracts with others for the sale of its products in all states, including New Jersey;
- On what basis does Powermax supply goods or provide services in the state of New Jersey based on written contracts:
- Whether Powermax employs anyone within the state of New Jersey, regardless of whether those individuals are residents or citizens of New Jersey;
- Whether Powermax directs marketing for the sale of its products to entities or individuals in the state of New Jersey, including marketing conducted through national retailers with whom Powermax has contracted to sell products;
- What business activities has Powermax conducted in New Jersey since it is ultimately for this Court to consider whether those activities are sufficiently "continuous, systematic or substantial" enough to confer jurisdiction.

AVI has a good faith basis for requesting jurisdictional discovery because, as set forth in the Preliminary Statement above, information AVI obtained calls into question the veracity of the statements offered in support of Powermax's Motion to Dismiss. Powermax claims that it does not directly sell products in New Jersey, but Powermax products were found on the shelves of a New Jersey Walmart. (Troutman Aff. [Exhibit "B"]).

5

There are two types of personal jurisdiction that permit a district court to hear a case involving a non-resident defendant: general and specific. *Display Work, LLCs v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016).

### A.      Specific Jurisdiction

Specific jurisdiction "depends on an affiliation[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014). The Third Circuit utilizes a three-part test to assess whether the exercise of specific jurisdiction is warranted. *O'Connor v. Sandy Lane Hotel Co.*, 496 F. 3d 312, 316 (3d Cir. 2007); *Petrucei v. Rusin*, 642 F. App'x 108, 110 (3d Cir. 2016). First, the defendant must have purposefully directed its activities at the forum. *Id.* Second, the plaintiff's claims must arise out of or relate to at least one of those activities. *Id.* Third, if the first two factors are met, the exercise of jurisdiction must comport with fair play and substantial justice. *Id.*

### 1.      Jurisdictional discovery is warranted to determine whether Powermax purposefully directed its activities to New Jersey.

Purposeful availment focuses on contact the defendant itself created with the forum State. *Burger King*, 471 U.S. at 475. The requirement is designed to prevent a person from being hauled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third-person." *Id.* There is no requirement that the defendant be physically located in the state while committing the alleged acts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Oticon, Inc. v. Sebotek Hearing Sys., LLC.*, 865 F.Supp.2d 501, 510 (D. N.J. 2011). A single act may suffice if it creates a substantial connection with the forum. *Id.*

Courts within the Third Circuit have considered the stream of commerce theory first articulated by the United States Supreme Court in *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 107 S. Ct. 1026 (1987). Under this theory, a court may exercise specific jurisdiction over a "corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagon Corp. v. Woodson*, 100 S. Ct. 559, 62 (1980). The Supreme Court stated that the question presented by the stream of commerce theory is:

> whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning the conduct.

*J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011). A defendant's conduct must, therefore, manifest "an intention to submit to the laws of the forum State." *Id.* at 2787.

Although the contacts at issue in *Nicastro* were insufficient, jurisdictional discovery is necessary to assess whether Powermax's contacts with New Jersey are sufficient to confer jurisdiction here. The relevant inquiry would include the following:

- Whether Powermax sold motors or fans with Powermax motors to individuals or entities in New Jersey;
- Whether Powermax sold or supplied motors or fans with Powermax motors to entities for sale in New Jersey;
- Whether Powermax entered into contracts with retailers for the sale of its motors or fans including its motors throughout the United States;
- Whether Powermax had knowledge of the number of its motors of fans with its motors sent to retailers located in New Jersey pursuant to any contracts;
- Whether Powermax participated in, reviewed, revised or provided material for advertisements used by retailers selling Powermax products in New Jersey;
- Whether Powermax sent its agents, employees or officers to meetings in New Jersey for any purpose;
- Whether Powermax participated in trade shows or exhibits within New Jersey; and

- Whether Powermax or its agents, officers, employees or assigns participated in the process for obtaining UL Certification within the United States and, specifically New Jersey in an effort to obtain approval for the sale and use of its products in the United States.

Jurisdictional discovery affords AVI an opportunity to develop the information necessary to prepare affidavits and documentation to support the exercise of specific jurisdiction over Powermax.

> **2.    To the extent the first prong of the analysis is met following jurisdictional discovery, the second prong would likewise be satisfied in that this lawsuit arises out of the sale of Powermax products or completed products containing Powermax motors in New Jersey.**

The Supreme Court stated that a party is subject to the regulation and sanctions in another State for the consequences of the party's activities when the party "reaches out beyond one state and create[s] continuing relationships and obligations with citizens of another state" (i.e. through interstate contractual obligations). *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950). As applied here, the jurisdictional discovery identified above would serve to satisfy this element as well. Namely, that Powermax directed activities to entities and individual consumers within the state of New Jersey and the sale of products through retailers in the state causes harms to New Jersey consumers, like Raymond Samoroo herein.

### B.    General Jurisdiction

General jurisdiction may be asserted over an out-of-state corporation when its "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). General jurisdiction requires significantly more than minimum contacts. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Although general jurisdiction typically lies in the state of incorporation or at the defendant's principal place of business, there are cases in which other

locations will be sufficient based on the defendant's contacts with that forum.  *See Bristol-Myers Squibb v. Sup. Ct.*, 137 S. Ct. 1773, 1780 (2017) (only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State); *Chavez v. Dole Food co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016). As applied here, AVI requires additional information regarding the nature and extent of Powermax's actual contacts with the state of New Jersey to assess whether those contacts are "so continuous and systematic so as to render [Powermax] essentially at home" in New Jersey.  *Daimler AG*, 571 U.S. at 139.

## **CONCLUSION**

In light of the numerous questions left unanswered, Air Vent, Inc. respectfully requests that this Honorable Court grant Air Vent, Inc.'s request for jurisdictional discovery and deny Powermax Electrical Co., Ltd.'s Motion to Dismiss at this juncture.

Dated:  Springfield, NJ
           September 21, 2020

WADE CLARK MULCAHY LLP

*/s/ Robert J. Cosgrove*
_____
By:  Robert Cosgrove, Esquire

*/s/ Jennifer L. Seme*
_____
By:  Jennifer L. Seme, Esq.